UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOFACTOR, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 24-cv-00175-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 38 |

Pending before the Court is Defendant Google LLC's motion to dismiss Plaintiff EcoFactor, Inc.'s complaint. ECF No. 38. The Court will grant the motion.

## I.  BACKGROUND

EcoFactor filed this case on January 9, 2024, alleging infringement of its United States Patent No. 11,835,394 (the "'394 Patent"). *See* ECF No. 1 ("Compl."). This case is one of the latest in a long line of patent litigations between Plaintiff EcoFactor, Inc. ("EcoFactor") and Defendant Google LLC ("Google") relating to smart thermostat and heating, ventilation, and air conditioning ("HVAC") technologies. *See e.g.*, *Google LLC v. EcoFactor*, Inc., 4:21-cv-03220-HSG, ECF No. 1 (N.D. Cal. Apr. 30, 2021); *Google LLC v. EcoFactor, Inc.*, 3:21-cv-01468-JD, ECF No. 1 (N.D. Cal. Mar. 01, 2021); *Google LLC v. EcoFactor, Inc.*, 5:22-cv-00162-PCP, ECF No. 1 (N.D. Cal. Jan. 11, 2022).

The '394 Patent is entitled "System and Method for Evaluating Changes in the Efficiency of an HVAC System" and issued on December 5, 2023. *See* ECF No. 1-1. The '394 Patent purportedly relates to the "use of thermostatic HVAC controls that are connected to a computer network[,]" whereby "communicating thermostats are combined with a computer network in order to evaluate changes in operational efficiency of an HVAC system over time." *Id.* at 1:40–45.

Independent claim 1 of the '394 Patent recites:

> 1. A control system for an environment inside a structure, comprising:
>
> a climate control device in the structure that receives first temperatures from inside the structure;
>
> a processor that:
>
> receives second temperatures from outside the structure from at least one source outside the structure; and
>
> compares the first temperatures and the second temperatures over time to calculate a current operating profile for the climate control device; and
>
> a database that stores the current operating profile for the climate control device,
>
> wherein the processor (a) compares a portion of the current operating profile for the climate control device with a stored temperature profile that represents a previous operating profile for the climate control device calculated at a different time to evaluate whether an operational efficiency of the climate control device has decreased over time, and (b) outputs a result of the evaluation, wherein: the portion of the current operating profile for the climate control device is limited to a specified first time interval, and the stored temperature profile is limited to a specified earlier second time interval.

*Id.* cl. 1.  Independent claim 10 recites:

> 10. A method for controlling an environment inside a structure, comprising:
>
> receiving, with a processor, first temperatures inside the structure from a climate control device inside the structure;
>
> receiving, with the processor, second temperatures outside the structure from at least one source outside the structure;
>
> comparing, with the processor, the first temperatures and the second temperatures over time to calculate a current operating for the climate control device; and
>
> storing, with the processor, the current operating profile for the climate control device in a database,
>
> comparing, with the processor, a portion of the current operating profile for the climate control device with a stored temperature profile that represents a previous operating profile for the climate control device calculated at a different time to evaluate whether an operational efficiency of the climate control device has decreased over time, and
>
> outputting, with the processor, a result of the evaluation, wherein: the

> portion of the current operating profile for the climate control device is limited to a specified first time interval, and the stored temperature profile is limited to a specified earlier second time interval.

*Id.* cl. 10. EcoFactor accuses Google of infringing the '394 Patent by offering for sale "smart thermostat systems, smart HVAC systems, smart HVAC control systems, and all components (including accessories)" including the Google Nest Thermostat, Nest Learning Thermostat Third Generation, and Google's servers, data centers, and online interfaces that provide support for its Nest-branded thermostats. Compl. ¶ 10. Google now moves to dismiss the Complaint on the grounds that the '394 Patent is directed to a patent-ineligible abstract idea under 35 U.S.C. § 101. *See* ECF No. 38.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most

3

1  favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**III.   DISCUSSION**

   **A.   Section 101 Patent Eligibility**

Section 101 of the Patent Act defines the scope of patentable subject matter as encompassing "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. It is well settled that "laws of nature, natural phenomena, and abstract ideas are not patentable" because they are "the basic tools of scientific and technological work" *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotations and citations omitted).  Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws.  *Id*.  However, the Supreme Court has also cautioned for the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*  Accordingly, "an invention is not rendered ineligible for patent protection simply because it involves an abstract concept[,]" and courts must distinguish between patents that claim abstract ideas, on the one hand, and patents "that claim patent-eligible applications of those concepts," on the other.  *Id*.

The Supreme Court and Federal Circuit have articulated a two-part test for determining whether a claim's subject matter is patent-eligible.  First, the Court "determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1346-47 (Fed. Cir. 2014) (citation omitted).  Under this first step of the analysis, courts "evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (internal quotation marks and citation omitted).  If the claims are directed to an abstract idea, the inquiry proceeds to step two. At step two, courts "consider the elements of each claim both individually and as an ordered combination" to determine "whether [the claim] contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217, 221 (quoting *Mayo Collaborative Servs. v. Prometheus*

4

*Lab'ys, Inc.*, 566 U.S. 66, 73, 79 (2012)). "This is the search for an 'inventive concept'—something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Content Extraction*, 776 F.3d at 1347 (quotation omitted).

Patent eligibility is appropriately decided on a motion to dismiss "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Courts in this district, including this Court, have regularly granted motions to dismiss under such circumstances. *See e.g.*, *PlanetID, LLC v. Digify, Inc.*, No. 19-CV-04615-JST, 2021 WL 567371, at *9 (N.D. Cal. Jan. 12, 2021); *W. Digital Techs., Inc. v. Viasat, Inc.*, No. 22-CV-04376-HSG, 2023 WL 7739816, at *6 (N.D. Cal. Nov. 15, 2023).

### 1. Representative Claim

As an initial matter, the parties dispute whether independent claim 1 of the '394 Patent is representative of the other claims for purposes of patent eligibility. *See* ECF No. 38 at 13–14; ECF No. 47 at 10, 18. Where parties disagree as to the scope of the representative claims, the district court may conduct its own analysis to make that determination. *See Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1141 (N.D. Cal. 2017) (*citing Content Extraction*, 776 F.3d at 1348). In so doing, the court may require that the patentee present "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]" *Berkheimer*, 881 F.3d at 1365. Failure to do so may result in a patentee "forfeit[ing] its ability to argue that other claims are separately patent eligible." *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 588 (Fed. Cir. 2020); *see also Splunk Inc. v. Cribl, Inc.*, No. 22-CV-07611-WHA, 2023 WL 2562875, at *5 (N.D. Cal. Mar. 17, 2023) (finding that "cursory comments on a few independent and dependent claims in the opposition do not present meaningful arguments for meaningful differences" between representative claim and other claims).

Like the patentees in *Brit. Telecomms.* and *Splunk*, EcoFactor has failed to make meaningful arguments as to the distinctive significance of the dependent claims in the '394

Patent.[1]  EcoFactor argues that "[e]ach dependent claim adds meaningful distinctions that only further demonstrate patent eligibility, and Google's failure to account for these differences means that its motion should be denied as to the dependent claims . . . ."  ECF No. 47 at 29.  However, the Federal Circuit has stated that "[c]ourts may treat a claim as representative . . . if the *patentee* does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim . . . ."  *Berkheimer*, 881 F.3d at 1365 (emphasis added); *Brit. Telecomms*, 813 F. App'x at 588 (treating claim 1 as representative where patentee disputed whether it was representative, but "presented no separate argument for the eligibility of any claim aside from claim 1[.]").  EcoFactor's arguments as to the dependent claims merely repeat the claim limitations of each claim, and assert that these narrowing limitations represent significant distinctions with no explanation of *how* these limitations meaningfully impact the patent eligibility analysis.  *See* ECF No. 47 at 29–30.  These cursory, one sentence arguments are insufficient to demonstrate why these limitations would render the claims separately patent eligible.  Accordingly, the Court treats independent claim 1 of the '394 Patent as representative for the purposes of the patent eligibility analysis.

### 2.   *Alice* Step One

The Court begins with step one of the *Alice* two-step patent eligibility inquiry, which asks whether the claim is directed to a patent-ineligible abstract idea.  At this step, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art."  *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022); *see also TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) ("We have approached the Step 1 'directed to' inquiry by asking 'what the patent asserts to be the "focus of the claimed advance over the prior art."'") (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).

The Court finds that, at its core, '394 Patent claim 1 is directed to an abstract idea:

---

[1] EcoFactor argues that the dependent claims are separately patent eligible but makes no attempt to argue that independent claim 1 is not representative of independent claim 10.  *See* ECF No. 47 at 29–30.

6

1   accounting for thermal mass of a structure in evaluating the operational efficiency of a climate
2   control system. '394 Patent claim 1 claims a climate control system that receives a "first
3   temperature from inside a structure" and "second temperature from outside the structure," and
4   compares these temperatures to calculate a "current operating profile" of the device. *Id.* cl. 1.  The
5   system then stores this profile and compares that profile with a stored "previous operating profile"
6   to "evaluate whether the operational efficiency of the climate control device has decreased over
7   time" and outputs the result of that evaluation. *Id.* According to the specification, the claimed
8   invention is advantageous to conventional thermostats and HVAC systems, which "[have] no
9   mechanism by which it might take the thermal mass of the structure into account, but the thermal
10  mass significantly affects many parameters relating to energy efficiency." *Id.* at 3:27–30.  The
11  '394 Patent claims an advance over these conventional systems by receiving a second temperature
12  from a source outside the structure (e.g., through the network), and using that information in
13  conjunction with the measured inside temperature to determine the thermal mass of the structure
14  and account for that thermal mass in determining the operation efficiency of the system over time.
15  *See id.* at 4:22–40.

16       A "telltale sign of abstraction is when the claimed functions are mental processes that can
17  be performed in the human mind or using a pencil and paper." *Trinity Info Media, LLC v.
18  Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023) (internal quotations and citations omitted).
19  That aptly describes the limitations of '394 Patent claim 1.  Essentially, the focus of the claimed
20  advance, as described in the '394 Patent, is the calculation of "operating profiles" including the
21  thermal mass of structures, by measuring the temperatures inside and outside a structure, and
22  comparing these operating profiles over time to determine whether the efficiency of the HVAC
23  system has decreased over time. "[W]ith the exception of generic computer-implemented steps"
24  such as using a processor to calculate profiles and storing those profiles in a database, "there is
25  nothing in the claims themselves that foreclose them from being performed by a human, mentally
26  or with pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318
27  (Fed. Cir. 2016).  Indeed, while the '394 Patent specification claims that no prior art HVAC
28  system could account for thermal mass, a human *using* such a system could conceivably calculate

7

the thermal mass of the structure by observing a "first temperature from inside a structure" and "second temperature from outside the structure." ECF 1-1 cl. 1. And, by doing so over time, a human could just as easily store the thermal mass calculations as "operating profiles" and use such data to "evaluate whether the operational efficiency of the climate control device has decreased over time." *Id.* The '394 Patent merely uses conventional computer and networking technology to improve the speed and efficiency of such calculations, but that is insufficient to render the claims patent eligible. *See Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 957 (Fed. Cir. 2021). Recognizing this, the Federal Circuit has regularly found that claims directed to the collection, organization, and comparison of data are "within the realm of abstract ideas." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting cases); *see also Berkheimer*, 881 F.3d at 1366 (claims directed to parsing and comparing data are abstract).

EcoFactor's counterarguments do not persuade. EcoFactor argues that the '394 Patent is directed toward "novel thermal efficiency calculations that allow the control system to calculate profiles that account for thermal mass, providing new analysis to improve how the system evaluates decreases in operational efficiency." ECF No. 47 at 15 (emphasis in original). However, none of the claims of the '394 Patent actually *recite* any particular thermal efficiency calculation, but instead claim the overall idea of calculating and comparing thermal efficiency generally. "[A] claim is ineligible if it fails to recite a practical way of applying an underlying idea and instead is drafted in such a result-oriented way that it amounts to encompassing 'the principle in the abstract' no matter how implemented." *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363 (Fed. Cir. 2021). Here, claim 1 of the '394 Patent does precisely this—there is no recitation of a specific method of calculating thermal efficiency, and the claim is drafted in a results-oriented way to encompass the entire idea of calculating and comparing thermal efficiency. Again, such claims have been regularly found abstract by the Federal Circuit. *See Free Stream,* 996 F.3d at 1363–64; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337 (Fed. Cir. 2017). And even if the claim recited a specific thermal efficiency calculation, "mathematical algorithms for performing calculations, without more, are patent ineligible under § 101." *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 989 F.3d 1367,

8

1372 (Fed. Cir. 2021) (collecting cases).

EcoFactor next argues that this Court should consider decisions by other courts that found related patents non-abstract. *See* ECF No. 47 at 21–23. The Court is not persuaded by these authorities. First, EcoFactor cites the Administrative Law Judge's decision in ITC Investigation No. 337-TA-1185, finding a related patent—U.S. Patent No. 8,423,322 (the "'322 Patent")—patent eligible under Section 101. *See* ECF No. 47 at 21 (citing ECF No. 47-2). However a subsequent decision in ITC Investigation No. 337-TA-1258 then found another related patent—8,886,488 (the "'6488 patent")—patent-ineligible under Section 101. *See* ECF No. 50-3 at 10–15. The independent claim of both the '322 Patent and '6488 Patent bear strong resemblance to claim 1 of the '394 Patent. *See* ECF No. 47 at 21–22 (comparing '394 Patent claim 1 with '322 Patent claim 1); ECF No. 50-4 (comparing '394 Patent claim 1 with '6488 Patent claim 1). That these ITC investigations came to apparently inconsistent decisions with regards to the patents at issue gives the Court little reason to afford much weight to either decision in deciding the patent eligibility of the '394 Patent.

EcoFactor also cites to *Google LLC v. EcoFactor, Inc.*, 602 F. Supp. 3d 1265, 1270 (N.D. Cal. 2022), which found patent eligible U.S. Patent No. 8,751,186 (the "'186 Patent"). However, in that case the '186 Patent claimed steps beyond those of the '394 Patent here. Specifically, the '186 Patent claimed that in addition to recording the inside and outside temperatures over time, that the computer system would calculate "one or more predicted rates of change in temperature at the first location" based on the recorded data. ECF No. 47-3 cl. 1. Moreover, the patent then claimed that, more than just comparing the data or calculations, the server computers would "determine whether to direct the HVAC control system to pre-cool the first structure . . . to reduce electricity demand." *Id.* Analogous limitations are absent from the '394 Patent, which does not require the claimed system to predict rates of change or take specific actions such as pre-cooling a structure; rather the '394 Patent merely claims recording and calculating the operational efficiency of HVAC systems. While these patents share a specification, it is the focus of the *claims* that matters—the '186 Patent arguably claims an improved HVAC system that uses the recorded data (including calculated thermal mass) to operate more efficiently by taking affirmative steps; the

9

1    '394 Patent only claims recording data to calculate *how efficiently* the system has been operating.
2    This distinction, though seemingly narrow, is relevant to one of *Alice*'s principle concerns:  that
3    upholding patent rights over too broad a concept "would pre-empt use of [an] approach in all
4    fields, and would effectively grant a monopoly over an abstract idea.").  *Alice*, 573 U.S. at 216
5    (quoting *Bilski v. Kappos*, 561 U.S. 593, 611–12 (2010)).  The '186 patent describes an inventive
6    system that uses a new idea to accomplish an improved result, while the '394 patent claims the
7    underlying idea itself, and therefore "risk[s] disproportionately tying up the use of the underlying
8    ideas" such that it would be "ineligible for patent protection."  *Id*. at 217 (quotation and citation
9    omitted).

10   For the above reasons, the Court finds that representative claim 1 of the '394 Patent is
11   directed to a patent-ineligible abstract idea.

### 3. *Alice* Step Two

13   Having found that claim 1 of the '394 Patent as directed to an abstract idea at step one, the
14   Court next turns to step two of the *Alice* inquiry, which asks "whether the claimed elements—
15   'individually and as an ordered  combination'—recite an inventive concept."  *Cellspin Soft, Inc. v.*
16   *Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217).  "An inventive
17   concept reflects something more than the application of an abstract idea using 'well-understood,
18   routine, and conventional activities previously known to the industry.'" *Id.*  Such a concept "must
19   be significantly more than the abstract idea itself, and cannot simply be an instruction to
20   implement or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T*
21   *Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); *see Savvy Dog Sys., LLC v. Pennsylvania*
22   *Coin, LLC,* No. 2023-1073, 2024 WL 1208980, at *3 (Fed. Cir. Mar. 21, 2024) (determining that
23   alleged inventive steps "are abstract ideas themselves—whether viewed as part of a set of rules for
24   playing a game or part of a game previewed to the player before committing to playing—and thus
25   cannot be an inventive concept under *Alice* step two.").

26   EcoFactor apparently concedes that the individual elements of the '394 Patent (e.g.,
27   climate control device, processor, database) are conventional, but argues that, as an ordered
28   combination, claim 1 recites an inventive idea.  *See* ECF No. 47 at 28–29 ("Indeed, in nearly every

case in which claims are held to be patent-eligible, the claims include known components, like the internet or a computer server or processor. It is just that, as here, the *combination* of those elements proves unconventional or else those components are *configured* to work in an unconventional way." (emphasis in original)).  Specifically, EcoFactor argues that at the time of the invention, conventional HVAC systems had "no mechanism by which it might take the thermal mass of the structure into account, but thermal mass significantly affects many parameters relating to energy efficiency." ECF No. 1-1 at 3:10-30, 9:28-10:22.  EcoFactor argues that the '394 Patent solved this problem by "calculating operating profiles that reflect thermal mass and calculating operational efficiency[.]"  ECF No. 47 at 24.

EcoFactor's argument here fails because it "simply restates what [the Court has] already determined is an abstract idea."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018).  Like the patentee in *BSG Tech*, EcoFactor "does not argue that other, non-abstract features of the claimed inventions, alone or in combination, are not well-understood, routine and conventional[.]"  899 F.3d at 1291.  Instead, EcoFactor argues that prior art conventional HVAC systems did not calculate or compare thermal mass in determining operating efficiency, and that the '394 Patent is inventive because it solved that problem.  Essentially, it argues that the patent improved conventional HVAC systems by applying the abstract idea of calculating and accounting for thermal mass in operating efficiency comparisons.  But "[a] claim's 'use of the ineligible concept to which it is directed cannot supply the inventive concept.' "  *Caselas, LLC v. VeriFone, Inc.*, No. 2023-1036, 2024 WL 2720092, at *3 (Fed. Cir. May 28, 2024) (quoting *BSG Tech*, 899 F.3d at 1290); *see also Savvy Dog*, 2024 WL 1208980, at *3.  Accordingly, the Court finds that the '394 Patent claims lack an inventive concept sufficient to elevate it to a patent eligible invention.

Finally, EcoFactor argues that this Court should consider extrinsic evidence, which it argues raise potential factual and claim construction disputes as to the conventionality of the '394 Patent.  These arguments do not persuade.  First, as to claim construction, the Federal Circuit has made clear that to avoid a dismissal under Section 101, a "patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances

must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity*, 72 F.4th at 1360–61; *see also Sanderling Mgmt. Ltd. v. Snap Inc.,* 65 F.4th 698, 704 (Fed. Cir. 2023). EcoFactor has not done so here, and so the Court will not consider any hypothetical claim construction disputes. Second, as to EcoFactor's extrinsic evidence, the Court will not consider such evidence on a motion to dismiss, which merely tests the sufficiency of the complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). If EcoFactor believes that the subject matter of its extrinsic evidence is relevant to the question of patent eligibility, it is free to make such allegations in its pleadings.

### B. Leave to Amend

Google requests that the Court dismiss the complaint with prejudice. *See, e.g.*, ECF No. 38 at 7. While the Court is skeptical that any additional allegations could establish that the asserted claims are directed to patent eligible subject matter, it cannot definitively say at this stage that amendment would be futile. Accordingly, the Court will grant EcoFactor one opportunity to file an amended complaint.

## CONCLUSION

For the foregoing reasons, Google's motion to dismiss is granted with leave to amend. Any amended complaint must be filed within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: November 18, 2024



JON S. TIGAR
United States District Judge