UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ECOFACTOR, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 24-cv-00175-JST <br><br> **ORDER GRANTING DEFENDANT GOOGLE LLC'S MOTION TO DISMISS** <br><br> Re: ECF No. 63 |

Pending before the Court is Defendant Google LLC's motion to dismiss Plaintiff EcoFactor, Inc's amended complaint. ECF No. 63. The Court will grant the motion.

## I.   BACKGROUND

EcoFactor filed this case on January 9, 2024, alleging infringement of its United States Patent No. 11,835,394 (the "'394 Patent"). *See* ECF No. 1. This case is one of the latest in a long line of patent litigations between Plaintiff EcoFactor, Inc. ("EcoFactor") and Defendant Google LLC ("Google") relating to smart thermostat and heating, ventilation, and air conditioning ("HVAC") technologies. *See e.g.*, *Google LLC v. EcoFactor*, Inc., 4:21-cv-03220-HSG, ECF No. 1 (N.D. Cal. Apr. 30, 2021); *Google LLC v. EcoFactor, Inc.*, 3:21-cv-01468-JD, ECF No. 1 (N.D. Cal. Mar. 01, 2021); *Google LLC v. EcoFactor, Inc.*, 5:22-cv-00162-PCP, ECF No. 1 (N.D. Cal. Jan. 11, 2022).

The Court previously dismissed EcoFactor's complaint on grounds that the '394 Patent was "directed to a patent-ineligible abstract idea" and "lack[ed] an inventive concept sufficient to elevate it to a patent eligible invention." ECF No. 56 ("Order") at 10–11. The Court "grant[ed] EcoFactor one opportunity to file an amended complaint." *Id*. at 12. EcoFactor timely filed its amended complaint ("FAC") on December 9, 2024. ECF No. 57 ("FAC"). Google now moves to dismiss EcoFactor's FAC on the same grounds it asserted in its prior motion to dismiss. ECF No. 63 ("Mot.").

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III. DISCUSSION

The Court previously determined that the asserted claims of the '394 Patent are not directed to patent eligible subject matter. Order at 12. Despite being "skeptical that any additional allegations could establish that the asserted claims are directed to patent eligible subject matter," the Court granted EcoFactor "one opportunity to file an amended complaint." *Id*. at 12. EcoFactor's FAC adds 57 new paragraphs, FAC ¶¶ 18–75, which allegedly "confirm[] the patent eligibility of the asserted claims." ECF No. 64 ("Opp.") at 5.

The Court observes that over half of the FAC's new paragraphs, *see* FAC ¶¶ 18–26, 45–72,

merely copy and paste arguments EcoFactor made in opposing Google's first motion to dismiss. Although Paragraphs 27–44 purport to set forth new allegations regarding the patent eligibility of the dependent claims and Paragraph 72–75 purport to set forth new allegations regarding extrinsic evidence the Court previously rejected, Paragraphs 18–26 and 45–72 are nearly identical to portions of EcoFactor's opposition to Google's first motion to dismiss. *Compare* FAC ¶¶ 47–50, *with* ECF No. 47 at 9–14, *and* FAC ¶¶ 66–72, *with* ECF No. 47 at 23–28.

### A.   Representative Claim

The parties dispute whether independent claim 1 of the '394 Patent is representative of the other claims for purposes of patent eligibility. Mot. at 19–20; Opp. at 22–28. The Court previously treated claim 1 as representative after finding "EcoFactor [] failed to make meaningful arguments as to the distinctive significance of the dependent claims in the '394 Patent." Order at 6. The Court explained that "EcoFactor's arguments as to the dependent claims merely repeat[ed] the claim limitations of each claim" and "assert[ed] that these narrowing limitations represent[ed] significant distinctions with no explanation of *how* these limitations meaningfully impact[ed] the patent eligibility analysis." *Id* (emphasis in original). EcoFactor once again argues that each dependent claim "adds meaningful distinctions that only further demonstrate patent eligibility . . . ." Opp. at 22; *see also* ECF No. 47 at 29. EcoFactor specifically argues that the "dependent claims are non-abstract at least because they describe how the improved HVAC monitoring device operates differently than prior art systems." Opp. at 22. The Court is not persuaded.

As an initial matter, although EcoFactor argues that the dependent claims are separately patent eligible, *see* Opp. 22–28, EcoFactor does not argue that independent claim 1 is not representative of independent claim 10. Accordingly, the Court treats claim 1 as representative of claim 10. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

The Court also finds claim 1 is representative of dependent claims 2–9 and 11–18.[1] EcoFactor has not shown how the additional limitations present in dependent claims 2–9 and 11–18 "meaningfully impact the patent eligibility analysis." Order at 6. For example, EcoFactor argues that dependent claims 2 is "separately patent eligible, because it specifically discloses where the first temperature must be received from—a programmable thermostat located inside the structure that is communicating with the climate control device." Opp. at 22; *see also id*. at 25. But this claim limitation merely adds the use of generic hardware, *see* '394 Patent, 1:65–2:26 (describing programmable thermostats used in prior art climate control systems), and EcoFactor does not otherwise explain how the use of a programmable thermostat renders claim 2 distinct from claim 1. EcoFactor also argues that dependent claim 3, which "discloses that the evaluation of operational efficiency must detect a change in the overall operating profile of the climate control device between a specified first-time interval and a specified earlier second time interval, [] recites how the diagnostic step differs from earlier approaches." Opp. at 23. But this single conclusory sentence is not sufficient to find claim 3 is distinct from claim 1. With respect to dependent claim 4, EcoFactor merely recites the claim language and concludes that this language "renders dependent claim 4 separately patent eligible." Opp. at 23. This is insufficient to show that claim 4 is distinct from claim 1. EcoFactor also argues that dependent claim 5 "further describes the hardware necessary to practice this claim[] and . . . recites how the system differs from what came before." Opp. at 23. But as with claim 2, claim 5 merely adds the use of generic hardware—a programmable thermostat with a display device.

With respect to claim 6, EcoFactor argues the claim is "non-abstract by reciting a concrete use for the determination in claim 1—identifying potential defects." Opp. at 23. But EcoFactor does not explain how the limitations in claim 6 "identify[] potential defects[,]" and even accepting EcoFactor's conclusory allegation as true, EcoFactor has not explained why "identifying potential defects" renders claim 6 distinct from claim 1 for purposes of patent eligibility. EcoFactor also argues that "[t]he inclusion of stored diagnostic temperature profiles associated with a plurality of

---

[1] The limitations recited in dependent claims 2–9, which depend from claim 1, are identical to those recited in dependent claims 11–18, which depend from claim 10.

4

1   potential defects and the professors' identification of one or more of those defects based on the
2   automatic evaluation of the operational efficiency is a specific technological improvement." Opp.
3   at 23. But once again, EcoFactor does not explain how this claim limitation improves on prior art
4   climate control systems or why this limitation renders claim 6 distinct from claim 1.[2] EcoFactor's
5   arguments with respect to claims 7–9 are similarly unpersuasive. *See* Opp. at 24–26 (arguing that
6   claims 7–9 "add[] additional, specific technological improvements . . . that enable EcoFactor's
7   patented invention to operate"). EcoFactor's cursory arguments are insufficient to show that
8   dependent claims 2–9 and 11–18 are distinct from claim 1 and that the claims are separately patent
9   eligible. Order at 6. Accordingly, the Court treats claim 1 as representative.

### B.  *Alice* Step One

The Court begins with step one of the *Alice* patent eligibility inquiry, which asks whether the claim is directed to a patent-ineligible abstract idea. At this step, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022). The Court previously determined that claim 1 of the '394 Patent was directed to the abstract idea of "accounting for thermal mass of a structure in evaluating the operational efficiency of a climate control system." The Court found that the claims were "drafted in a results-oriented way to encompass the entire idea of calculating and comparing thermal efficiency." Order at 6–8. The Court repeats that conclusion here.

EcoFactor's arguments with respect to step one of the *Alice* analysis largely repeat arguments the Court previously rejected. For example, EcoFactor argues that claim 1 is not directed to an abstract idea, because it "recites an enhanced climate control system that is smarter than prior systems because it uses particular thermal efficiency calculations to detect decreases in operational efficiency that prior systems were not equipped to detect." Opp. at 8; *see also id*. at 10 ("The claimed invention of the '394 patent improves conventional thermostats by using such

---

[2] Even accepting EcoFactor's conclusory argument that the dependent claims improve on prior art climate control systems, this argument appears to be directed to the issue of novelty and not subject matter eligibility.

'thermal mass' and 'efficiency' metrics to solve technical shortcomings in diagnosing changes in HVAC efficiency."), 11 ("[T]he claims are directed to the use of novel thermal efficiency calculations that allow the control system to calculate profiles that account for thermal mass, providing new analysis to improve how the system evaluates decreases in operational efficiency."). This is the same argument EcoFactor made in opposing Google's first motion to dismiss. *See* ECF No. 47 at 9 (arguing the '394 Patent claims "are directed to a novel climate control system that improves the functioning of existing systems, which could not account for thermal mass and differences in building insulation in detecting declines in the operational efficiency of a climate control system"). The Court squarely rejected this argument, explaining that "none of the claims of the '394 Patent actually recite any particular thermal efficiency calculation, but instead claim the overall idea of calculating and comparing thermal efficiency generally." Order at 8. The Court further noted that "even if the claim recited a specific thermal efficiency calculation, mathematical algorithms for performing calculations, without more, are patent ineligible under § 101." *Id*. (quotations and citation omitted).

EcoFactor similarly argues that claim 1 "expressly recites" calculations for: (1) "a current operating profile based on comparing a multitude of indoor and outdoor temperatures over time," (2) "a stored temperature profile based on indoor and outdoor temperatures from a different time period," and (3) "using these calculated profiles to evaluate whether operational efficiency of the climate control device has decreased over time, and outputting a result of the evaluation." Opp. at 11. Notably, EcoFactor does not cite the language of claim 1 and instead recharacterizes the claim language to support its position. But an examination of the claim language makes clear that claim 1 does not actually recite any calculations, much less any "thermal efficiency calculations." *See* '394 Patent, cl. 1. EcoFactor's characterization of the claim language cannot circumvent the claim language itself.

EcoFactor also renews its challenge to Google's "pen and paper" analogy. Opp. at 12. The Court previously agreed with Google, explaining that a human using a prior art HVAC system "could conceivably calculate the thermal mass of the structure by observing a 'first temperature from inside a structure' and a 'second temperature from outside the structure'" and "store the

6

1   thermal mass calculations as 'operating profiles' and use such data to 'evaluate whether the
2   operational efficiency of the climate control device has decreased over time.'" Order at 8.  The
3   Court concluded that the '394 Patent "merely use[d] conventional computer and networking
4   technology to improve the speed and efficiency of such calculations, but that [was] insufficient to
5   render the claims patent eligible." *Id*.  EcoFactor does not address the Court's prior reasoning and
6   instead duplicates its prior argument. *Compare* Opp. at 12, *with* ECF No. 47 at 19.  The Court
7   once again rejects EcoFactor's argument and reiterates its prior conclusion that the claimed
8   invention of the '394 Patent is nothing more than a "mental process[] that can be performed in the
9   human mind or using a pencil and paper."  Order at 7 (quoting *Trinity Info Media, LLC v.
10  Covalent, Inc.*, 72 F.4th 1355, 1361 (Fed. Cir. 2023).

11       EcoFactor also reargues that "numerous EcoFactor patents have been confirmed patent-
12  eligible by multiple judges and a jury—including multiple patents related to the '394 Patent at
13  issue here." Opp. at 13; *see also* Dkt. No. 47 at 21–23.  Although "cognizant that the Court
14  previously indicated it was 'not persuaded by these authorities,' EcoFactor submits that a fresh
15  reexamination of these relevant authorities in conjunction with EcoFactor's First Amended
16  Complaint compels a different result." *Id*. at 14.  The Court disagrees.  EcoFactor has not set forth
17  any new factual allegations rebutting the Court's prior conclusion that the claims of the '394
18  Patent are directed to an abstract idea.  EcoFactor instead repeats arguments (in both its FAC and
19  opposition brief) that the Court already considered and rejected.  In light of the foregoing, the
20  Court again finds that the claims of the '394 Patent are directed to an abstract idea.

21       **C.    *Alice* Step Two**
22       Having found that claim 1 of the '394 Patent as directed to an abstract idea, the Court turns
23  to step two of the *Alice* inquiry, which asks "whether the claimed elements—'individually and as
24  an ordered combination'—recite an inventive concept." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927
25  F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217).  "An inventive concept reflects
26  something more than the application of an abstract idea using 'well-understood, routine, and
27  conventional activities previously known to the industry.'" *Id.*  Such a concept "must be
28  significantly more than the abstract idea itself, and cannot simply be an instruction to implement

7

1   or apply the abstract idea on a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility*
2   *LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).
3         EcoFactor does not dispute that the individual claim elements of claim 1 are not inventive.
4   ECF No. 64 at 15–17. Instead, EcoFactor argues that "the ordered combination of claim elements
5   [a climate control device, processor, and database that work together to receive inside
6   temperatures, receive outside temperatures from a remotely located source, compare large
7   amounts of temperature data to calculate and store a profile reflecting thermal mass, and compare
8   calculated profiles over time to evaluate changes in a climate control device's operational
9   efficiency] is not conventional . . . ." *Id*. at 16. This is the same argument the Court rejected in its
10  prior order, Order at 11, and EcoFactor has not set forth any new arguments explaining why the
11  ordered combination of claim elements is inventive or unconventional.
12        EcoFactor also renews its argument that claim construction disputes preclude Google's
13  motion to dismiss. The Court previously found EcoFactor had not specifically identified a claim
14  construction dispute that needed to be resolved before the scope of the claims could be understood
15  for § 101 purposes. Order at 12. EcoFactor now argues that the parties' "unresolved dispute [over
16  the term 'operational efficiency'] . . . is important because the term 'operational efficiency'
17  appears in numerous claims of the '394 Patent." Opp. at 29. Although EcoFactor has identified a
18  specific claim construction dispute, EcoFactor has not explained how that dispute bears on the
19  Court's patent eligibility analysis. That a claim construction dispute exists by itself does not
20  preclude a § 101 determination. *Content Extraction & Transmission LLC v. Wells Fargo Bank,*
21  *Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[C]laim construction is not an inviolable
22  prerequisite to a validity determination under § 101."). EcoFactor has not explained how its
23  proposed construction "would make any difference to the *Alice* analysis." *Sanderling Mgmt. Ltd.*
24  *v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023); *see also Simio, LLC v. FlexSim Software Prods.,*
25  *Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("The main problem with this argument is that
26  [plaintiff] has not explained how it might benefit from any particular term's construction under an
27  *Alice* § 101 analysis."); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178,
28  1184 (Fed. Cir. 2020) (concluding the district court properly resolved patent eligibility at the

8

1  pleadings stage without first conducting claim construction where patentee did not explain how
2  any term's construction "could affect the analysis"). Moreover, even under EcoFactor's proposed
3  construction of "operational efficiency," the Court still finds claim 1 is directed to ineligible
4  subject matter. *Sanderling*, 65 F.4th at 704 ("If claims are directed to ineligible (or eligible)
5  subject matter under all plausible constructions, then the court need not engage in claim
6  construction before resolving a Section 101 motion."). The Court therefore finds the parties'
7  dispute over the term "operational efficiency" does not preclude a § 101 determination.

EcoFactor also argues that "[a]dditional [extrinsic] evidence, which the Court did not consider in its previous ruling, reinforces the unconventionality of EcoFactor's solution." Opp. at 17.[3] EcoFactor argues that the 2007–2007 Global Field Trial Results "show EcoFactor's patented solution was unique in harnessing thermal mass calculations accounting for differences in building insulation." Opp. at 18.[4] However, EcoFactor does not relate this extrinsic evidence to the claims of the '394 Patent. Simply quoting excerpts from the 2007–2008 Global Field Trial Results, without explaining how those excerpts relate to the claim limitations themselves, is insufficient to demonstrate that the claims of the '394 Patent recite an inventive step. Accordingly, the Court finds that the claims of the '394 Patent lack an inventive concept sufficient to elevate the claims to a patent eligible invention.

## IV.   CONCLUSION

For the foregoing reasons, Google's motion to dismiss EcoFactor's complaint is granted. In light of EcoFactor's failure to address the concerns expressed in the Court's prior order, the Court finds that further leave to amend would be futile and dismisses EcoFactor's claims with prejudice. *City of Oakland v. Oakland Raiders*, 445 F. Supp. 3d 587, 603–04 (N.D. Cal. 2020),

---

[3] EcoFactor previously asked the Court to consider extrinsic evidence of EcoFactor's 2007–2008 Global Field Trial Results and testimony from Scott Hublou, one of the named inventors of the '394 Patent. ECF No. 47 at 27. The Court declined to do so, as the extrinsic evidence was not pleaded in the complaint. However, the Court stated that "[i]f EcoFactor believe[d] [] the subject matter of its extrinsic evidence [was] relevant to the question of patent eligibility, it [was] free to make such allegations in its pleadings." Order at 12. EcoFactor subsequently amended its FAC to include allegations regarding this extrinsic evidence. *See* FAC ¶¶ 72–74.

[4] Again, the Court notes that the claims of the '394 Patent do not themselves describe any "thermal mass calculations." *See* '394 Patent, cl. 1.

*aff'd*, 20 F.4th 441 (9th Cir. 2021).  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  June 24, 2025

_____
JON S. TIGAR
United States District Judge